## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DISIVION

**CORTEZ L. GOULD**                                                                            **PETITIONER**
**ADC# 111870**

**v.**                                    **Case No. 4:20-cv-01084-BRW-JTK**

**DEXTER PAYNE,** *Director*,
**Arkansas Division of Correction**                                        **RESPONDENT**

### PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Billy Roy Wilson.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.  Why the record made before the Magistrate Judge is inadequate.

2.  Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the United States Magistrate Judge.

3.  An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, Untied States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR  72201-3325

<u>DISPOSITION</u>

For the reasons that follow, the undersigned recommends that the Petition for Writ of Habeas Corpus, Doc. No. 1, be denied and dismissed with prejudice.  It is further recommended that a certificate of appealability not issue.

I.    <u>Factual and Procedural History</u>

The Faulkner County prosecutor charged Gould with committing armed robbery at a Cricket cellular store in Conway, Arkansas, on September 7, 2012.  *Gould v. State*, 2016 Ark. 124, 484 S.W.3d 678 (*Gould I*).  At trial, the parties empaneled a jury with one alternate juror available. The jurors were instructed on the rules and received admonishments to not talk amongst themselves about the case or about anyone involved until the end of the case when retired to the jury room for deliberation. *Id.*  During trial, the

2

owner of the Cricket store testified and gave a general description of the robber, who she described as clean shaven.  The police presented her with a photographic lineup five days after the crime, and she identified Gould as the person who robbed the store.  *Id.*  Two photographs of Gould were admitted into evidence and published to the jury.  A police detective testified Gould appeared to be wearing the same shirt in both photographs.

Gould informed his attorney he heard two jurors (later identified as Jurors Campbell and Creswell) discussing the photographs.  *Id.*  The prosecutor admitted he heard the two women speak to each other but only heard one juror respond "not" or "no."  Defense counsel brought this interaction to the attention of the Court and requested a mistrial. Rather than grant a mistrial, the Court questioned the two jurors and removed the juror it found made the initial comment.  The Court thereafter sat the alternate.  *Id.*

The jury thereafter found Gould guilty of aggravated robbery and theft of property by threat.  Due to enhancements for his use of a firearm in the commission of these crimes, Gould received an aggregate sentence of forty (40) years in the Arkansas Division of Correction (ADC).  On appeal to the Arkansas Court of Appeals, Gould argued "[t]he trial court erred in denying [his] motion for a mistrial due to juror misconduct."  *Gould I*, 2016 Ark. App. 124, at 1, 484 S.W.2d at 680; Doc. No. 11-4.  Because Gould failed to demonstrate there was a reasonable probability of resulting prejudice having one of the jurors remain on the jury, the Arkansas Court of Appeals affirmed the trial court on February 24, 2016.  *Id.*

Gould subsequently filed his Rule 37 petition, alleging ineffective assistance of trial counsel.  *See Gould v. State*, 2019 Ark. App. 418, 585 S.W.3d 182 (*Gould II*).  The trial

court denied relief, and Gould sought review by the Arkansas Court of Appeals. Gould argued his trial counsel was ineffective when he failed to (1) file a motion to suppress the photo lineup identification of him by the victim as the man who robbed her; (2) file a written, rather than making an oral, motion *in limine*, challenging the in-court identification of him by another victim as the man who robbed her; (3) call two defense witnesses; and (4) spend adequate time with him in preparation for trial. *Id.* The Arkansas Court of Appeals found the trial court did not clearly err in denying the Rule 37 petition. Specifically, the Court held the trial court's finding---that any uncertainty regarding the victim's pretrial identification of Gould related to her credibility and not the admissibility of the identification---was not clearly erroneous. *Gould II*, 2019 Ark. App. at 9. The Court also found no clear error in the trial court's finding that Gould's trial counsel was not deficient by electing to make an oral motion to exclude the testimony as opposed to filing a written motion, as the decision fell within the wide range of reasonable professional assistance. *Id.* at 12. The Court further found no clear error by the trial court's finding that, had one of two defense witnesses been called to testify, the testimony would have been inadmissible hearsay and the second of the two witnesses would have provided no alibi for Gould because she would have confirmed that he visited her several hours after the robbery took place. *Id.* at 13-14. Finally, the Court deferred to the trial court's determination that counsel spent an adequate amount of time with Gould in preparation for trial.

Gould timely filed the instant federal habeas petition on September 10, 2020. (Doc. No. 1) The claims for relief include: (1) Petitioner's Sixth and Fourteenth Amendment

rights to a fair and impartial jury were denied when two jurors engaged in improper conversation about two exhibits introduced into evidence; (2) Petitioner's Sixth and Fourteenth Amendment rights to effective assistance of counsel were denied when counsel failed to file a motion to suppress one victim's photo lineup identification of him; and (3) Petitioner's Sixth and Fourteenth Amendment rights to effective assistance of counsel were denied when trial counsel failed to file a motion *in limine* to challenge a second victim's in-court identification of him.  *See id.*

Respondent admits Gould is in ADC custody but denies he is entitled to any relief. (Doc. No. 11) In his Traverse, Gould reiterates his arguments and requests a new trial.[1] (Doc. No. 16)

II.    Applicable Law

Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts only "when the state court's decision [is] contrary to, or involve[s] an unreasonable application of, clearly established federal law, as determined by the Supreme Court [of the United States], or the [state court] decision [is] based on an unreasonable determination of the facts in light of the evidence presented in the state court."  *De la Garza v. Fabian*, 574 F.3d 998, 1001 (8th Cir. 2009). "A state court decision is contrary to clearly established federal law if it reaches a

---

[1] Gould also maintains that the complete trial transcripts are essential to assess the constitutional errors at trial, the extent to which he was prejudiced by them, and the unreasonableness of the Arkansas Court of Appeals decision, and therefore, asks this Court to order the State to furnish them.  (Doc. No. 16, at 1).  In conformity with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, the Respondent "must attach to the answer parts of the transcript that the respondent considers relevant." The undersigned finds sufficient the submissions provided.

conclusion opposite to one reached by the [United States] Supreme Court on a question of law or decides the case differently than the [United States] Supreme Court has decided a case with a materially indistinguishable set of facts." *Id.* "A state court decision involves an unreasonable application of clearly established federal law if, in the federal court's independent judgment, the relevant state court decision not only applied clearly established federal law incorrectly, but also did so unreasonably." *Id.* "The unreasonable application inquiry is an objective one. *Id.*; *see Losh v. Fabian*, 592 F.3d 820, 823 (8th Cir. 2010) (under the unreasonable application clause of § 2254, a habeas petition may be granted "only if the state court applied the correct governing legal principle in an objectively unreasonable manner").

In reviewing state court proceedings to ascertain whether they are contrary to or involve an unreasonable application of clearly established federal law, this Court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-181 (2011). Additionally, this Court's review is limited to consideration of the United States Supreme Court precedents at the time the state court issues its decision on the merits. *Greene v. Fisher*, 565 U.S. 34 (2011) (relying on *Cullen*, *supra*); *accord Losh*, 592 F.3d at 823 ("[o]nly rulings in [United States] Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply established federal law if there is no controlling [United States] Supreme Court holding on the point") (citations omitted). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts

them.'" *Revels v. Sanders*, 519 F.3d 734, 739 (8th Cir. 2008) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)).

"[T]he 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of [§ 2254's] standard." *Brown v. Luebbers*, 371 F.3d 458, 462 (8th Cir. 2004) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication of state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Id.* at 100. When, however, a state court issues a summary ruling, the petitioner can only satisfy the "unreasonable application" prong of habeas review by showing there is no reasonable basis for the state court decision, which the habeas court assesses by determining what arguments or theories could have supported the state court decision and whether fair-minded jurists could disagree that those arguments or theories are inconsistent with a prior decision of the United States Supreme Court. *Cullen v. Pinholster*, 563 U.S. at 187 (quoting *Harrington v. Richter*, 562 U.S. at 98, 101).

Additionally, in a federal habeas action pursued by a state prisoner, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The deference owed by a federal court to a state court's findings of fact includes deference to state court credibility determinations. *Smulls v. Roper*, 535 F.3d 853, 864 (8th Cir. 2008) (en banc).

Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by a state court at either the trial or appellate levels. *Id.* at 864-65.

III.    <u>Discussion</u>

    A.    *Jury Misconduct (Claim One)*

In his first ground for relief, Gould asserts his constitutional rights to a fair and impartial jury were denied when two jurors engaged in improper conversation related to the two admitted and published photographs of him.  He argues the trial court excused the juror who denied saying anything while allowing the juror who admitted to "engaging in an inappropriate discussion regarding critical pieces of evidence to remain on the jury" when it should not have made a distinction between the two. (Doc. No. 1 at 8)  In essence, Gould claims the removal of one juror without removal of the other--primarily because there was only one alternate juror who could be seated and removal of both jurors would have required a mistrial--was in violation of his constitutional right to a fair and impartial jury.  Respondent submits Petitioner has offered "nothing demonstrating that the holding involved an unreasonable application of clearly established federal law," and therefore, the claim must fail. (Doc. No. 11 at 8) The undersigned agrees with the Respondent.

When Gould saw Jurors Campbell and Creswell speaking, he alerted his counsel, who notified the Court.  The prosecutor acknowledged he saw the women speaking and heard something like "No" or "Not."  (Doc. No. 11-4, p. 30).  Defense counsel argued that, because the jurors were clearly admonished at least twice by the Court not to discuss the case with anyone and to not make up their minds until the case was submitted to them, they

had violated the Courts admonition, and therefore, he believed a mistrial was in order.  He

argued:

> DEFENSE COUNSEL:  They've discussed the evidence right there in open court
> in front of people to the - - and in the - - you know, it's one
> thing my client says it, but in all - - and to his credit, counsel has
> said that he - - he has indicated that [he] heard something that
> would be consistent with that at least.  And so we're - - I'm in a
> position of having to be forced to either - - well, to ask for a
> mistrial, but certainly have the Court make a determination as to
> whether or not they violated your - - your instructions on a very
> critical point.

(Doc. No. 11-4, p. 30)

The prosecutor responded that he thought a mistrial was the most extreme remedy

that would be inappropriate given the posture of the case.  *Id.* at 31.  Instead, the prosecutor

proposed that the Court voir dire the suspected jurors to independently assess the matter.

After a brief recess, the Court denied the request for a mistrial, and at the behest of defense

counsel, agreed to voir dire the jurors. Once the jurors were identified, the Court called

each of them back to his chambers.  *Id.* at 45-47. First, Juror Campbell entered the Court's

chambers for an in-camera proceeding, whereby the following colloquy took place:

> COURT:  Ma'am, could you come in right over here and have a seat, please?
>
> JUROR CAMPBELL:  Yes, sir.
>
> COURT:        I have a couple of questions I need to ask you.  And just for the
> record, state your name, please ma'am.
>
> JUROR CAMPBELL:  Vicky Campbell.
>
> COURT:  Ms. Campbell, you have been serving as a juror in this case for the
> last day and a half or so; right?
>
> JUROR CAMPBELL:  Yes, sir.

COURT:  You were seated on the front row this morning?

JUROR CAMPBELL:  Yes, sir.

COURT:         Okay.  At some point in these proceedings, Mr. Davis produced two photographs of Mr. Gould.  Did you make any comment bout those photographs to anyone else in the jury box?

JUROR CAMPBELL:  The lady that I sat next to, we were discussing the color of the - - the shirt.

COURT:         Uh-huh.  Did you - - what - - and by discussing, what did you - - do you recall what was said?

JUROR CAMPBELL:  We mentioned that the collars - - the collar was - -

COURT:  We, was it you or her that mentioned the collar?  I need to - -

JUROR CAMPBELL:  Well, the lady that was sitting on my right, she mentioned the collars first about the - - the black - -

COURT:  Uh-huh.

JUROR CAMPBELL:  - - around the collar - -

COURT:  Uh-huh.

JUROR CAMPBELL:  - - and I looked at them and then I passed them on.

COURT:         Okay.  Did you make any comment one way or the other about the collar or the color or anything else at that point to her or anyone else?

JUROR CAMPBELL:  Not - - no.

COURT:  Okay.  So it was the lady to your right, okay.

JUROR CAMPBELL:  Yes.

COURT:  Do you know what her name is by chance?

JUROR CAMPBELL:  (No audible response.)

COURT:          Okay. But did you or the juror next to you, who I know to be Ms. Creswell, did either of you respond to her comment or did you say anything to her in response to this - -

JUROR CAMPBELL:  I - - let me think. I think perhaps I may have said that the collar had the black, but the collar looked - - the lady to my right said something about the collar looking different and I just said it has the same black, one's turned it and one's turned out.

COURT: Okay.

JUROR CAMPBELL:  I didn't say that out loud. I was thinking that to - -

COURT:          Okay, all right. So if anyone said anything out loud it would have been the lady to your right.

JUROR CAMPBELL:  Yes, sir.

COURT: Okay. Thank you very much.

JUROR CAMPBELL:  Uh-huh.

COURT:          Please rejoin the jury and don't discuss what we - - our discussions here.

JUROR CAMPBELL:  No, sir.

COURT: You're under the rule - - the admonition.

JUROR CAMPBELL:  Yes, sir.

*Id.* at 47-50. Juror Campbell exited the Court's chambers, after which the following proceedings were had:

COURT:          Well, you said it was the lady in the black and the lady in the black said she didn't say anything, Mr. Gould.

DEFENDANT: The lady in the black said something to the - - excuse me, sir, Your Honor. Could I speak?

COURT: Yes, sir.

11

DEFENDANT:  The - - her - - she said something to the lady that was sitting on the left.

COURT:  Well, she just testified she did not.

DEFENSE COUNSEL:  Which calls into question even further, Your Honor.

PROSECUTING ATTORNEY:  Your Honor, may I speak?  This is just a fact question at this point in time.  I mean, two different people have said two different things.  The Court - - you know, I guess - - the Court   is not a fact finder, obviously, but I think it would be appropriate for the Court to consider what it's going to - - you now, the different people saying two different things.  One is true.  One is not so - -

DEFENSE COUNSEL:  Judge, if the Court would inquire of counsel what it - - Mr. Gould told me - - he started pointing and I tried to put his hand down.

COURT:  Uh-huh.

DEFENSE COUNSEL:  And when he told me I immediately turned and went to tell counsel what he had told me and quite frankly was a little bit surprised.  He said, "I heard somebody say "no" or something in the negative, but I'm not sure."

PROSECUTING ATTORNEY:  Uh-huh.

DEFENSE COUNSEL:  I don't know who he heard or if he even knows who he heard saying something negative.  Now he's a juror that's not admitted that she did anything wrong and my client is - - if he was going to make up something and say that it's a fact question, first of all, the Court – - here some corroboration from the witness - - from the juror herself that something was said.  My client has indicated and told you from the beginning what he heard and who he thought said it.

COURT:  Uh-huh.

DEFENSE COUNSEL:  The fact that counsel heard some - - some communication that seemed to be consistent with this whole conversation just makes this process even more tainted as far as I'm concerned.

And I don't want to get in the middle of trying to have a - - you to have a mini-trial as to whether something occurred. And I – - Judge, I will tell you that the case went about as good as it could go for Mr. Gould; okay? It's still a difficult situation for him to be in. But I don't want to wake up two weeks from now and Mr. Gould got a life sentence and we had a jury that may not have been - - may not have - - well, didn't follow your instructions and we - - and this process be on that - - that he's got to suffer for some time on. And I - - it just - - if there's ever a case - - I agree that mistrial is an extreme remedy. But if there's ever a situation when that extreme remedy needs to occur it's now. And I think the Court even in real time saw Mr. Gould's reaction to something had occurred. And I - - I would think the Court probably saw me try to make sure that no juror saw him pointing. So - -

COURT: I did notice that when he left the courtroom.

PROSECUTING ATTORNEY: And, Your Honor, just to address that, if we were going to - - of the - - still the persuasion of excluding someone, it looks like not to exclude her but to exclude the person that - -

COURT: Well, I don't have a - - I don't have enough alternates to exclude - -

PROSECUTING ATTORNEY: No, I'm just saying she didn't discuss anything. She said that she thought in her head that it looked like it was a black collar just turned out. So she did not have a discussion about the evidence. She - - It just seemed like from what she said - - I mean, I think - - I may have heard it wrong, but she said the other person said that to her and that she thought about that and that - - she didn't say - - cause you asked her, "Did you say something back to her?" And you said - - and she said, "I thought that." I may be misquoting her, but I don't believe I am.

DEFENSE COUNSEL: I don't disagree that that she got - - she came in here and said something. But the question is would she come in here and admit that she did something she wasn't suppose to do. And –

COURT: Well, and the problem now is, gentlemen, that I've poisoned the well. You know, my understanding was this was the woman who supposedly made the remark. I brought her in here now and I have, I

guess, unintentionally poisoned the well.

DEFENSE COUNSEL:  But, Judge, we still contend that she said that and she's been dishonest with the Court.  There's no other way to put it.  And then here's the thing:  If Mr. Gould was going to say something that was - - that was untrue, why would he pick the wrong one to say said something?  That's what he said from the beginning and - - and it'd be different if counsel hadn't heard something similar and we're just going off the word of a desperate defendant.  That's not what we're doing here.  He reacted in realtime.  I tried to make sure that no juror saw him pointing because I thought it would be a negative connotation.  He's told me what he said.  The Court probably watched me walk over and immediately tell [the prosecuting attorney] who I'm not going to say corroborated but at the very least confirmed that there was some - - some back and forth of somebody saying something, which kind of corroborate - - not corroborates, but adds credence to what Mr. Gould has said.  And - - and, you know, I don't want to call this - I don't know her from campaign.  All I know is she came in and denied having said anything and, you know - - I don't know, I've - - I'm just rambling now, Judge.

PROSECUTING ATTORNEY:  And, Your Honor, if I may speak.  I don't want to interrupt your thought here.  I'm just throwing this out here.  I know the Court is concerned that it's poisoned the well, to use the Court's words j- in reference to that, but my prospective - - and like I said, I'm just one of the parties involved in this, I think the directed questions you asked her wouldn't make her prejudice by her decision in this case.  You asked her did she say this.  Did you discuss this?  She said she heard the other person say that and she said - - disagreed with her.  She - - she said she thought she disagreed with her and that in her mind she thought the collar was flipped the other way.  I don't feel like the Court by saying - - asking the questions it did, necessarily prejudices any - - the juror or taints the pool as - - or poisons the well, as you say.  I can't - - I don't want to misquote you even though I know I did.

DEFENSE COUNSEL:  Judge, I'll just stand on what we've said. I think I was just rambling and repeating myself and the Court - - the Court

understands the issue.

COURT:  Oh, yeah, I understand the issues and I'm - -

PROSECUTING ATTORNEY:  And I know the Court is thinking bout this.  I know that we're at a somewhat lunch break time.  Is it possible that we send the jury out for lunch and maybe see if we can - - we can research the law anything about any discussions between jurors?  If - - if I - - obviously, I don't want the Court to go forward either if there's clear law that says if anything is said during the box that it's an automatic reversal.  I don't know if it's reversible error or not.

DEFENSE COUNSEL:  Judge, I had it – I've had an issue that was a cell phone issue or something, internet issue or something.  And what the standard is going to be is it - - is either side prejudiced.

COURT:  Uh-huh.

DEFENSE COUNSEL:  I call it process, but I think it's the same thing, and what's the prejudice and whether or not it - - you know, it rises to the level of being prejudicial.  So - - I don't know.

COURT:  Well, at the very minimum it's a comment on the evidence made at in appropriate [sic] juncture of the case. . . . Here's what I'm going to do.  I want the jury back in the box in the same order they were this morning.  I'm going to talk to the lady in - - next to - - to the right of Ms. Campbell.  I'll ask her to join us in chambers.  I'll ask her the same questions that I asked Ms. Campbell.  Get her responses and then make a ruling.  I'll either - - I'll reconsider your motions for a mistrial or at least - - or at a minimum replace her if - - depending on her answers to my questions.

*Id.* at 50-59.

The Court asked Ms. Creswell to join him, the defendant, and the attorneys in chambers.  The in-camera proceeding was as follows:

COURT:  Would you state your name for the record, please ma'am.

JUROR CRESWELL:  Deborah Creswell.

15

COURT:          Ms. Creswell, you've been serving as a juror in this case for the last day and a half or so.

JUROR CRESWELL:  That's correct.  Yes, I did.

COURT:  Did you make any comment to any other juror about those pictures?

JUROR CRESWELL:  When the lady beside me handed them to me, she said, "That's not the same picture."  And I said - - or "not the same shirt."  And I said, "I think you're right.  It's not the same shirt."  I didn't mean to say it out loud.  I apologize to everyone about that.

COURT:  Okay.

JUROR CRESWELL:  And then I passed the pictures on.

COURT:          All right, thank you, ma'am.  You may rejoin the panel, please, and don't discuss anything we talked about, please.

Juror Creswell exited the Judge's chambers, and defense counsel interjected:

DEFENSE COUNSEL:  Now, we've got jurors blaming the other one.

COURT:          Well, she responded to a remark from Ms. Campbell.  Ms. Campbell is the one who initiated the conversation.  That's why I'm going to excuse Ms. Campbell.

DEFENSE COUNSEL:  If that's the Court's decision, I - -

COURT:          That's going to be the Court's decision.  And we might as well just go ahead and send them to lunch.

*Id.* at 59-62.

In *Gould I*, the Arkansas Court of Appeals held Gould failed to demonstrate prejudice from juror Creswell remaining on the jury, having found any misconduct on her part appeared "to have had no discernible effect on [her] ability to decide [Gould's] guilt or innocence in a fair and impartial manner."  *Gould v. State*, 2016 Ark. App. 124, at 5,

484 S.W.3d at 681.  When Gould noticed the interaction, he immediately notified his trial counsel who brought the matter to the attention of the Court.  As evidenced by the colloquies outlined above, the Court conducted an *in camera* inquiry of the jurors identified and removed juror Campbell after finding her to be the one who made the initial comment. In so doing, the Arkansas Court of Appeals noted that the Court "agreed with defense counsel that fairness and the appearance were paramount, but noted that the substantive issue was whether there had been resulting prejudice requiring a mistrial." *Gould v. State*, 2016 Ark. App. at 4, 484 S.W.3d at 681.  Finding none, the Court affirmed.  The Court further noted the trial court's continued admonitions to the jury after removing Campbell and after his *in camera* inquiry of Creswell yet prior to deliberation.

Principles of due process guaranteed by the Sixth Amendment, as applicable to the States through the Fourteenth Amendment, provide criminal defendants in state court an "impartial jury." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *Duncan v. Louisiana*, 391 U.S. 145 (1968). "Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests."  *United States v. Morrison*, 449 U.S. 361, 364 (1981). Thus, the United States Supreme Court has noted previously that the Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith v. Phillips*, 455 U.S. 209, 217 (1983).  Instead, the Court noted that due process means "a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful

to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.* The test of juror impartiality is whether "the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. at 723.

The Arkansas Court of Appeals' rejection of this issue is not contrary to, or an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts in light of the evidence presented in state court.

### B. Ineffective Assistance of Counsel (Claims Two and Three)

In his second and third claims for relief, Gould argues his counsel provided ineffective counsel by (1) failing to file a motion to suppress McCarthy's pretrial identification of him in a photographic lineup and (2) relying on an oral rather than written motion to challenge Chambliss's identification testimony.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). And to establish that "a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult [because the] standards created by *Strickland* and § 2254(d) are both "highly deferential," ... and when the two apply in tandem, review is "doubly" so[.]" *Harrington v. Richter*, 562 U.S. at 105 (quoting *Strickland v. Washington*, 466 U.S. 68, 689 (1984); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal citations omitted).

> The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether

there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* at 105 (internal citations omitted).

To prove ineffective assistance of counsel, a petitioner must establish both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. at 687. There is a "strong presumption" that counsel provides "reasonable professional assistance"; thus, in order to establish deficient performance of counsel, one must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688-689. A petitioner proves deficient performance if he can show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The prejudice prong, on the other hand, requires petitioner show with "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* It is not enough "to show the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must be "so serious at to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

(1) Motion to Suppress

For his second claim for relief, Gould asserts counsel was ineffective when he failed to file a motion to suppress the photo-lineup identification of him by Judy McCarthy. Failure to file a meritorious motion to suppress can constitute ineffective assistance of counsel if it resulted in prejudice. *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986). The

test is whether "on the totality of the circumstances," *see Stovall v. Denno*, 388 U.S. 293, 301-302 (1967), the pretrial photographic identification was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).

The record on appeal shows that Judy McCarthy was working at the Cricket store on the morning of September 7, 2012, when Gould was accused of robbing it. She was shown photo lineups on September 10 and 12, 2012, and did not identify anyone from the photo lineup on September 10. *See Gould II* (Doc. No. 11-10, at p. 5). She did on September 12, however, identify Gould as the robber from the photo lineup. *Id.* The evidence indicates that a recording of this photo lineup interview was played to the jury. McCarthy first stated she thought photo #3 was the person and then stated, "I want to say #4" but she was not sure. Thereafter, McCarthy viewed the photos together and selected photo #3, stating "that is the person." *Id.* She signed a form confirming her identification of Gould as the robber. *Id.*

In addressing this issue on appeal, the Arkansas Court of Appeals determined the trial court's finding—counsel did not render deficient performance by failing to file a motion to suppress McCarthy's photo lineup identification of Gould—was not an unreasonable application of *Strickland's* standards, "stating that any uncertainty regarding McCarthy's pretrial identification of Gould related to McCarthy's credibility and not the admissibility of the identification." *Id.* at p. 9. Gould's trial counsel testified at the Rule 37 hearing that he did not file a motion to suppress because he did not believe it would have been successful, and his chosen course of action was "to attack McCarthy's credibility

and the weight of her identification by extensively cross-examining her about her statements during the photo-lineup procedure." *Id.* at p. 10.

The Arkansas Court of Appeals reasonably applied the principles of the *Strickland* framework in determining Gould's trial counsel did not provide ineffective assistance of counsel. Counsel's decision not to file a pretrial motion to suppress evidence of the photo lineup was reasonable trial strategy as counsel testified that he did not believe a motion to suppress would be successful. *See Griffin v. Delo*, 33 F.3d 895, 901 (8th Cir. 1994) ("When a claim for ineffective assistance of counsel is alleged on the basis of failing to ... act, the reasonableness of the nonfeasance must be assessed in light of all circumstances, and a significant degree of deference given to counsel and his or her professional judgment."); *see also Armstrong v. Kemna*, 534 F.3d 857, 863 (8th Cir. 2008) ("Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment.") (quoting *Strickland v. Washington*, 46 U.S. at 689). Accordingly, the Court does not find the decision to be contrary to or an unreasonable application of *Strickland*. Therefore, this claim is denied.

(2) <u>Written versus Oral Motion in Limine</u>

Gould's third and final claim is that counsel was ineffective for choosing to make an oral, rather than written, motion to challenge his in-court identification by Lori Chambliss, another Cricket employee working in the store on the day of the robbery. He argues in his petition as well as his traverse that counsel failed in his oral motion to mention to the Court both the inconsistencies in Chambliss's written statement and her inability to

recall the height of the robber notwithstanding her absolute confidence in her ability to identify Gould as the robber during her in-court identification. Instead, Gould argues counsel restricted his argument to the suggestive nature of him being the defendant in the courtroom and the fact Chambliss was unable to make a pretrial identification, despite three opportunities pretrial to identify him from the photo lineups.

In addressing this argument on appeal, the Arkansas Court of Appeals noted trial counsel's testimony during the Rule 37 hearing that, strategically, he decided to make his motion to exclude Chambliss's identification testimony before she testified at trial so that the State had no time to prepare for it and to file a written response. *Gould II* (Doc. No. 11-10, p 12). In ruling that on the claim, the Rule 37 court held "whether written or oral, the motion was made, it was argued, and it was ruled upon by the Court. It would be a matter of form over substance in that the issues were brought before the Court and were acted upon prior to trial. Therefore, the Court finds that there was no deviation from the standard and no prejudice." *Id.* On appeal, the Arkansas Court of Appeals found no error in the motion court's finding, noting it fell within the wide range of reasonable professional assistance, and this Court does not find the decision to be contrary to or an unreasonable application of *Strickland*. Gould's counsel had two options regarding Chambliss's testimony. He could have either filed the written motion prior to trial or did as he chose and made the oral motion at trial prior to her taking the stand. Counsel elected the second option because he did not want the State to be prepared to respond. Even so, the motion court held the strategy was form over substance because, whether oral or written, the objection was made, argued, and ruled upon. Thus, the Court concludes that counsel's

election to make an oral argument was reasonable considering all the circumstances of this case. The denial of the motion gave counsel further opportunity to challenge Chambliss's credibility in light of the inconsistencies between her earlier statements and her in-court identification of Gould. In any event, it certainly must be noted that Gould has failed to carry the burden of showing that counsel's actions were unreasonable. As such, Gould's third claim must be denied.

III. <u>Certificate of Appealability</u>

When entering a final order adverse to the Petitioner, the Court must issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court. The Court can issue a certificate of appealability only if Petitioner has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). In this case, Gould has not provided a basis for issuing a certificate of appealability.

IV. <u>Conclusion</u>

For the reasons outlined above, the Court recommends that the Petition for Writ of Habeas Corpus, Doc. No. 1, be denied and dismissed with prejudice. It is further recommended that a certificate of appealability not issue.

SO ORDERD this 7th day of September, 2021.

_____
UNITED STATES MAGISTRATE JUDGE